IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CARL M. BURNETT | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 17-00236 |
| PANASONIC CORPORATION OF NORTH AMERICA, and PANASONIC INTELLECTUAL PROPERTY CORPORATION OF AMERICA | * * | |
| | * | |
| Defendants. | | |

******

**MEMORANDUM OPINION**

Pending in this patent infringement suit is Panasonic Corporation of North America and Panasonic Intellectual Property Corporation of America's ("Defendants") Motion to Dismiss for Failure to State a Claim filed March 9, 2017. ECF No. 15. Plaintiff Carl M. Burnett ("Plaintiff") opposed the Motion on March 24, 2017 (ECF No. 17) to which Defendant replied on April 10, 2017. ECF No. 20. Given the complexity of the issues involved, Plaintiff was given leave to file a surreply, ECF No. 23, as were Defendants, ECF No. 28. The issues are fully briefed, and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons stated below, the Defendants' Motion to Dismiss is granted.

**I.    Background**

The following facts are drawn from the Amended Complaint and taken as true for purposes of this opinion. Plaintiff is an information technologist and owner of two patented "geospatial technologies," U.S. Patent No. 6, 681,231 (the "'231 Patent") and U.S. Patent No. 7,107,286 (the "'286 Patent"). ECF No. 12-2 at 1–2. Since the '286 Patent was issued by the USPTO in September 2006, ownership of the '286 Patent has been transferred four or more times, but at all

1

times both patents were retained by the Plaintiff or corporations controlled by Plaintiff as CEO and President. ECF No. 18-2 at 4. Defendants are manufacturers of electronic products, including cameras and camcorders. ECF No. 12-2 at 2.

Plaintiff alleges that Defendants' video cameras and camcorders incorporate the use of Plaintiff's patented technology and that Panasonic's manufacture, use, and that the sale of these products infringe upon claims 1 and 9 of the '286 Patent. ECF No. 12-2 at 16. Plaintiff further avers that through Defendants' continued sale of products using Plaintiff's technology, Defendants are "actively inducing" continued infringement of Plaintiff's Patent. ECF 12-2 at 18.

Although Plaintiff is the present owner of both the '231 Patent and the '286 Patent, only infringement of the '286 Patent is alleged. The '286 Patent is an "integrated system of hardware and software modules for processing visual, audio, textual, and geospatial information" and includes seventeen (17) claims. ECF No. 1-2 at 56. Plaintiff asserts patent infringement for two of these claims, claim one (1) and claim nine (9).[1] ECF No. 18-2.

### a. SMPTE Standards 330M and 373M

The Society of Motion Picture and Television Engineers (SMPTE) is an organization that, among other responsibilities, recommends specific formats for motion-imaging content through the publication of "Recommended Practices," "Standards," and engineering guidelines for the motion picture industry. In January 2010, Plaintiff's affiliated corporation and then-owner of the '286 Patent, Global Findability, Inc. (GFI), discovered an intellectual property statement in an SMPTE Recommended Practice. ECF No. 18-2 at ¶ 48. The document, *Recommended Practice: SMPTE RP 204-2009-Application of Unique Identifiers in Production and Broad Environments*, announced that "no notice had been received by SMPTE claiming

---

[1] Although Plaintiff's arguments frequently rely upon the '231 Patent and other claims of the '286 Patent, the Court's discussion and analysis is limited to the specific claims for which Plaintiff actually alleges patent infringement, claims 1 and 9 of the '286 Patent. *See* ECF No. 17-2.

patent rights essential to the implementation of this Standard," but that "attention is drawn to the possibility that some of the elements of this document may be the subject of patent rights." *Id.* In response, GFI filed a voluntary patent licensing declaration to license the '286 Patent for the technology implemented in SMPTE 330M: 2004 ("330M Standard"). *Id.* at ¶ 49. The 330M Standard specifies the format of Unique Material Identifiers (UMID), which are unique identifiers for picture, audio, and data material that is automatically generated or manually created and encrypted into a media file. *Id.* at ¶ 56. The metadata of a UMID may include date and time, spatial co-ordinates, country code, organization code, and user code. *Id.*

On November 5, 2013, Geocode-LA Inc. (GLA), who acquired the '286 Patent in July 2013,[2] *see id.* at ¶ 27, submitted an updated patent licensing declaration to cover additional SMPTE standards, including SMPTE 337M-2004 Material Exchange Format File Format Specification Standard ("337M Standard"). ECF No. 18-2 at ¶ 52. The 337M Standard defines the data structure of Material Exchange Format (MXF) for network transport and storage of audiovisual material. *Id.* at ¶ 57. One of the specifications of the 337M Standard includes a UMID metadata identifier. *Id.* On January 24, 2017, Plaintiff, now the assigned owner of Patent '286, notified SMPTE that Plaintiff's patents would no longer be offered for implementation of SMPTE standards, including 330M and 337M. ECF No. 18-2 at ¶ 55; *see also* ECF No. 1-9 at 2.

### b. Defendants' Alleged Infringement of the '286 Patent

Defendants manufacture and sell media equipment that incorporates the 330M and 337M SMPTE Standards. ECF No. 18-2 at ¶¶ 58–63. By Plaintiff's approximation, twenty-seven (27)

---

[2] Ownership of the '286 Patent has transferred several times, but Plaintiff was CEO and President of all corporate entities. The original owner of the '286 Patent was GeoQwest International, Inc. (GQI). GQI merged into Global Findability, Inc., in May 2007. GFI was rebranded as BWGM, Inc., in January 2012. On January 12, 2012, BWGM incorporated Geocode, Inc. as a wholly owned subsidiary. From May 12, 2012 through July 28, 2013, Geocode, Inc., owned the '286 Patent. Another BWGM subsidiary, Geocode-LA, Inc. (GLA), was assigned the patent on July 28, 2013, and owned the '286 Patent until its assignment to the Plaintiff on February 2, 2016. *See* ECF No. 18-2 at 4.

3

Panasonic models conform to these Standards. *Id.* at ¶ 83. Defendants also sell or have sold six (6) cameras or camcorders that incorporate a Global Positioning System ("GPS") receiver and the 330M or 337M Standard, *id.* at ¶ 85, and five (5) models that incorporate a GPS receiver, but not the 330M or 337M Standard, *id.* at ¶ 86. In 2012 and 2014, the previous owner of the '286 patent, Geocode, Inc. notified SMPTE-compliant manufacturers, including Defendants, of the SMPTE patent licensing agreement. *Id.* at ¶¶ 64–66. Throughout 2012 through 2014, the respective '286 Patent owners[3] engaged Defendants in discussions for a potential licensing agreement for the '286 Patent, but the parties were unable to reach an agreement. *Id.* at ¶¶ 66–82.

Subsequently, on January 26, 2017, Plaintiff filed this Complaint alleging that Defendants' infringed on Plaintiff's patent. ECF No. 1. Plaintiff submitted an Amended Complaint, naming the present Defendants and asserting specifically that Defendants' products, by employing the 330M and 337M SMPTE standards, integrate the technology protected by Claim 1 and Claim 9 of the '286 Patent.[4] ECF No. 18-2 at ¶¶ 91–93. Claim 1 asserts ownership of:

> 1. A geospatial media recorder, comprising:
>
>> converting means for converting longitude and latitude geographic degree, minutes, and second (DMS) coordinate alphanumeric representations or decimal equivalent geographic coordinate alphanumeric representations and altitude alphanumeric representations into individual discretion all-natural number[5] geographic coordinate and measurement representations; and
>> combining means for concatenating the discrete all-natural number geographic coordinate and measurement representations into a single discrete all-natural number geospatial coordinate measurement representation for identification of a

---

[3] *See supra* n.2.
[4] While Plaintiff's Complaint alleges that "Panasonic has infringed on at least Claim 1 and Claim 9 of the '286 Patent," ECF No. 18-2, implying a broader patent infringement claim, Plaintiff only argue Defendants' alleged infringement on Claims 1 and 9. See ECF Nos. 18-2 & 23-1.
[5] In contrast to alphanumeric representations, which are comprised of both letters and numbers, "natural numbers" are positive integers (whole numbers).

> geospatial positional location at, below, or above earth's surface allowing user to geospatially reference entities or objects based on the identified geospatial positional location and point identification.

ECF No. 1-2 at 59.

And claim 9 asserts ownership of:

> 9. A geospatial information processing method comprising:
>
> converting latitude and longitude geographic degree, minutes, and seconds (DMS) coordinate alphanumeric representations or decimal equivalent geographic coordinate alphanumeric representations and latitude alphanumeric representations into individual discrete all-natural number geographic coordinate and measurement representations; and
> concatenating the individual discrete all natural number geographic coordinate and measurement representations into a single discrete all-natural number geospatial coordinate measurement representation for identification of a geospatial positional location at, below, or above earth's surface allowing user to geospatially reference entities or objects based on the identified geospatial positional location and point identification.

ECF No. 1-2 at 60.

Defendants have moved to dismiss the Amended Complaint, arguing that each of the claims asserted by Plaintiff are invalid under 35 U.S.C. § 101. ECF No. 15. Specifically, Defendants argue that Plaintiff's claims fall into the section 101's "abstract ideas" exception, as they are directed solely to the abstract concept of "performing mathematical operations on a computer to arrive at a particular data format." ECF No. 20 at 15. As discussed below, the Court agrees.

## II.     Legal Standard

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Plaintiff is proceeding pro se, and his Complaint is to be construed liberally. See *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, liberal construction does not absolve

Plaintiff from pleading plausible claims. See *Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981) (citing *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. The complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.' " *Id.* (quoting *Twombly,* 550 U.S. at 570).

Moreover, it is well established is that a defendant in a patent infringement suit may move for dismissal under Rule 12(b)(6) because the patent in question concerns abstract ideas or the basic tools of scientific and technological work. *See, e.g., OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015); *Ultramercial, Inc., v. Hulu LLC*, 772 F.3d 709, 714–15 (Fed Cir. 2014). "Courts may . . . dispose of patent-infringement claims under § 101 whenever procedurally appropriate." *Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016); *see also Secured Mail Solutions LLC v. Universal Wilde, Inc.*, Case No. 17-1728, 2017 WL 45827437 at *6–*7 (Fed. Cir. Oct. 16, 2017) (noting "this court has determined claims to be patent-ineligible at the motion to dismiss stage based on intrinsic evidence from the specification without need for 'extraneous fact finding outside the record.' ")

6

(internal citation omitted); *Context Extraction & Transmission LLC v. Wells Fargo Bank, Nat Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming that when the court has a "full understanding of the basic nature of the claimed subject matter," the question of patent eligibility can be resolved on the pleadings).

In testing the sufficiency of a complaint, courts may "consider documents attached to the complaint" under Fed. R. Civ. P. 10(c), provided the documents are "integral to the complaint and authentic." See *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Here, Plaintiff has attached numerous exhibits to his original Complaint, including the Patent on which the Court is centrally focused. ECF No. 1-2. As such, the Patent is integral to the Amended Complaint because it reflects the Plaintiff's ownership of the '286 Patent and the legal basis for his infringement claim. *See Chesapeake Bay Foundation, Inc. v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d 602, 611 (D. Md. 2011) ("An integral document is a document that by its very existence, and *not the mere information it* contains, gives rise to the legal rights asserted.") (internal citation omitted). The Defendants do not challenge the authenticity of the document or contest Plaintiff's ownership, *see* ECF No. 15, and so the Court will consider the '286 Patent attached to Plaintiff's original Complaint. ECF No. 1-2.

## III. Discussion

35 U.S.C. § 101 defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The United States Supreme Court has long recognized an implicit exception to the universe of patentable material to include laws of nature, natural phenomena, and abstract ideas, all of which represent "the basic tools of scientific and technological work." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc*, 133 S.Ct. 2107, 2116 (2013) (quoting *Mayo*

*Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)). To evaluate patent infringement defenses premised on § 101, the United States Supreme Court developed a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2355 (2014).

In the first step, the court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If they are, in step two the court looks to whether the claim elements, either individually or as an ordered combination, contain an "inventive concept" that "'transform[s] the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 72, 78). Each stage of the *Alice* two-step inquiry is "plainly related" and "involve[s] overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

### A. *Alice* Step One

The "Supreme Court's formulation makes clear that the first-stage filter is a meaningful one, sometimes ending the § 101 inquiry." *Id.* at 1353. Not every claim that recites tangible components escapes the reach of the abstract-idea inquiry. *See e.g., Alice*, 134 S.Ct. at 2360 (claims that recite general-purpose computer components are nevertheless "directed to" an abstract idea); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (claims reciting a "scanner" are directed to an abstract idea); *Mortg. Grader, Inc. v. First Choice Loan Serv. Inc.*, 811 F.3d 1314, 1324–25 (Fed. Cir. 2016) (claims reciting an "interface," "network," and a "database" are nevertheless directed to an abstract idea). In assessing whether claims constitute patent-ineligible abstract ideas, the Court must carefully avoid oversimplifying the challenged claims because "[a]t some level, 'all

inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.' " *Alice*, 134 S.Ct. at 2354 (quoting *Mayo*, 566 U.S. at 71); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) ("The 'directed to' inquiry, therefore, cannot simply ask whether the claims *involve* a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon.").

Defendants' central challenge is that Plaintiff has patented a basic and widely applicable mathematical methodology to convert geospatial coordinates into natural numbers.[6] *See, e.g.*, ECF No. 17-2 at 11–14. This kind of "conventional and generic" idea, they argue, is exactly what *Alice* sought to prevent because patenting such concepts would foster "monopolization of these tools," which in turn would "tend to impede innovation more than it would tend to promote it." *Alice*, 134 S.Ct. at 2354 (quoting *Mayo*, 566 U.S. at 71); *see also* ECF No. 15-1 at 8–19. Plaintiff counters that these "converting and concatenating" operations, performed "in a computer" with its "structure defined by the concatenation operations," are "specialized data processing" and take the claims beyond the realm of abstract ideas. *Id.*

However, neither claim 1 or 9, nor any information provided in the Amended Complaint, constitute anything more than a patent-ineligible concept. *See* ECF Nos. 1-2, 18-2 & 23-1; *accord Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed Cir.

---

[6] Plaintiff provides definitions of these terms:

> Concatenating: "a programming process that is the operation of joining two strings together and in addition to strings, concatenation can be applied to any other data, including objects . . . Concatenation is an information technology technical term that defines a specific computer process of creating [meta]data in computer memory for use by other computer processes." ECF No. 17-2 at 9.
>
> Converting is "[t]he computer process of taking geospatial positioning representations in Degree-Minute-Second-or Decimal Degree, and altimetric format and other geospatial information and changing these geospatial positioning entities into an all-natural number that can be used to create a geospatial coordinate, the GEOCODE, for use as a data segment or object in geospatial information system processing operations and analysis." ECF No. 17-2 at 10.

9

2014) (noting that "nothing in the claim language expressly ties the method [to a physical device] . . . the claim generically recites a process of combining two data sets"). Notably, the broad language of claims 1 and 9 would cover any process for converting geographic coordinates into alphanumeric representations. The claims involve broad theoretic application of a mathematical methodology which is not dependent on a device to achieve its outcomes. Accordingly, claims 1 and 9 are abstract ideas under step one of the *Alice* analysis. *See McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("The abstract idea exception [is] applied to prevent patenting of claims that abstractly cover results where it matters not by what process or machinery the result is accomplished . .. [a] patent may issue for the means or method of producing a certain result, or effect, and not for the result or effect produced.") (internal citation omitted); *see also Gottschalk v. Benson*, 409 U.S. 63, 72 (1972) (program to "solve mathematical problems of converting one form of numerical representation to another" was not a patent eligible process because "the patent would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself."); *Digitech Image Technologies v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) ("a process that employs mathematical algorithms to generate additional information is not patent eligible."); *Secure Mail Solutions LLC v. Universal Wilde, Inc.*, 169 F. Supp. 3d 1039, 1057 (C.D. Ca. 2016), ("Plaintiff has failed to convincingly argue the concatenation of data qualifies as a fundamental alteration to the information itself.") (internal citation omitted), *aff'd*, Case No. 2016-1728, 2017 WL 4582737 (Fed. Cir. Oct. 16, 2017).

     **B.** ***Alice* Step Two**

Where, as here, the patent covers an abstract idea, it does not necessarily "render the subject matter patent-ineligible." *Internet Patents Corp. v. Active Network, Inc*, 790 F.3d 1343,

1346 (Fed. Cir. 2015). Step two of the *Alice* inquiry sets out to determine "whether the remaining elements . . . are sufficient to transform the nature of the claim into a patent-eligible application." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (internal citation and quotations omitted). To be patent-eligible, the claim "must do more than simply explain what the invention does, in functional terms; *they must explain how it does so*." *Dealertrack v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012) (emphasis in original).

Plaintiff contends that because these claims "converting and concatenating" operations are performed "in a computer" they constitute "specialized data processing" taking them beyond the realm of abstract ideas. *Id.* However, the use of generic computers to perform mathematical operations alone is "insufficient to add an inventive concept to an otherwise abstract idea." *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 614 (Fed. Cir. 2016). For the use of a computer to "salvage an otherwise patent-ineligible process, [it] must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp Services, LLC v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). But where "computers are invoked merely as a tool" to be employed as part of the asserted claim, the claim will not be patent-eligible. *Enfish, LLC, v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016).

Plaintiff's use of a computer does not render claims 1 and 9 patent-eligible. Claims 1 and 9 describe a "geospatial media recorder" to "encode geospatial data onto video frames at time of video acquisition," ECF No. 17-2 at 12, and a "geospatial information processing method" that records geospatial data through "specialized concatenation operations conducted in a computer" that convert the data into a different numeric form.[7] ECF No. 17-2 at 12. In simpler terms, the

---

[7] Elsewhere, Plaintiff has patented the name of the converted, natural number geospatial data as the "GEOCODE." However, because this term does not appear in either of the patent claims at issue, the Court will not adopt this term.

11

claims collectively work together to record geospatial data, such as latitude and longitude, convert the geospatial data into a different numeric form, and then encode the converted data onto video. Because the computer is used only to complete the process of converting alphanumeric into natural numbers, it is "merely as a tool" in the conversion process. The computer, therefore, adds no independent inventive concept to render the claims patent-eligible.

Plaintiff also argues that the operation outlined by claims 1 and 9, which include the entry of converted data into a computer's memory, change the "state" of the computer and make it patent eligible under the "machine-or-transformation test" articulated in *Diamond v. Diehr*, 450 U.S. 175 (1981). The machine-or-transformation test "can provide a useful clue in the second step of the *Alice* framework." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014). Under *Diehr*, a claimed process can be patent eligible if "it is tied to a particular machine or apparatus," *id.*, and performs "a function which the patent laws were designed to protect" by "transforming or reducing an article to a different state or thing." *Diehr*, 450 U.S. at 192. In *Diehr*, the mathematical formulation improved existing processes for the *literal* transformation of raw, synthetic rubber into cured synthetic rubber. *Id.* [8]

---

[8] It is illuminating to contrast the claim in *Diehr* with the language employed by claims one and nine. Representative Claim 1 in *Diehr* reads:
> "1. A method of operating a rubber-molding press for precision molded compounds with the aid of a digital computer, comprising:
> "providing said computer with a data base for said press including at least,
> "natural logarithm conversion data (ln),
> "the activation energy constant (C) unique to each batch of said compound being molded, and
> "a constant (x) dependent upon the geometry of the particular mold of the press,
> "initiating an interval timer in said computer upon the closure of the press for monitoring the elapsed time of said closure,
> "constantly determining the temperature (Z) of the mold at a location closely adjacent to the mold cavity in the press during molding,
> "constantly providing the computer with the temperature (Z),
> "repetitively calculating in the computer, at frequent intervals during each cure, the Arrhenius equation for reaction time during the cure, which is
> "ln v = CZ + x
> "where v is the total required cure time,

Plaintiff's claims, by contrast, are non-specific acts of converting, combining, and concatenating numbers using generic computers. *Accord Ultramercial*, 772 F.3d at 716 (holding that a claim does not pass the machine or transformation test if it is "not tied to any particular novel machine or apparatus, only a general purpose computer."); *see also Smart Systems Innovations, LLC v. Chicago Transit Authority*, Case No. 2016-1728, 2017 WL 4654964 at *9 (Fed. Cir. Oct. 18, 2017). Unlike *Diehr,* Plaintiff's claims do not involve any particular machine or apparatus to manufacture anything. Because Plaintiff in essence seeks to "patent a mathematical formula" and not seek patent for a manufacturing process, *Diehr* does not save Plaintiff's claims.

Nor does the fact that claims 1 and 9 are used in connection with video production alter the *Alice* step two analysis. "[T]he use of a computer in an otherwise patent-ineligible process for no more than its most basic function –making calculations or computations–fails to circumvent the prohibition against patenting abstract ideas." *Bancorp Services, LLC v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). Plaintiff's attempts to limit the abstract ideas captured in claims 1 and 9 to a particular technological area does not, without more, transform it into a patentable "inventive concept." *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347, 2358 (2014); *see also Parker v. Flook*, 437 U.S. 584, 593 ("[R]espondent incorrectly assumes that if a process application implements a principle in some specific fashion, it automatically falls within the patentable subject matter of § 101 . . . [this is] untenable in the context of § 101.").

---

"repetitively comparing in the computer at said frequent intervals during the cure each said calculation of the total required cure time calculated with the Arrhenius equation and said elapsed time, and
"opening the press automatically when a said comparison indicates equivalence. "
*Diehr*, 450 U.S. 175, 180 n.5 (1981).

Finally, Plaintiff frequently implies, but does not explicitly argue, that this Court should look beyond claims 1 and 9 to the entire '286 Patent *and* the prosecution history of the '231 Patent to find that the '286 patent captures an inventive concept. *Supra*; *compare* '286 Patent, ECF No. 1-2 at 59–60 *with* ECF No. 17-2 at 13–17. The fatal flaw in Plaintiff's argument, however, lies in the cause of action that he chose to pursue. In the Amended Complaint, Plaintiff centers his suit on claims 1 and 9 of the '286 patent. The Court likewise circumscribes its analysis to whether Plaintiff's cause of action as pleaded in the Amended Complaint survives challenge. *Accord Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (noting that "[t]he determination whether a complaint adequately states a plausible claim is a 'context –specific task,' in which the *factual allegations of the complaint* must be examined." (emphasis added) (internal citation omitted); *see also Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Accordingly, because claims 1 and 9 constitute abstract concepts not transformed by the use of a computer into patent-eligible claims, defendants should not be made to answer and defend the Amended Complaint. The Defendants' Motion to Dismiss is therefore GRANTED. A separate order will follow.

| | |
|---|---|
| 11/1/2017 | /s/ |
| Date | Paula Xinis |
| | United States District Judge |